Delbert VAN DUSEN, M.D., David M. O'Brien, M.D., and Columbus Regional Hospital, Appellants (Defendants Below),

v.

William H. STOTTS and Sharon Stotts, Appellees (Plaintiffs Below).

No. 03S00–9711–CV–631.

Supreme Court of Indiana.

July 8, 1999.

Michael D. Conner, Mark E. Spitzer, Browne Spitzer Herriman Stephenson Holderead & Musser, Marion, IN, Attorneys for Appellants.

Patrick W. Harrison, Beck & Harrison, Columbus, IN, Attorney for Appellee.

SELBY, J.

This case and two other cases currently pending before this Court address the constitutionality of the two-year medical malpractice statute of limitations contained in Indiana Code section 34–18–7–1(b) (1998) (repealing section 27–12–7–1(b) (1993)). In each of these cases, plaintiffs challenge the constitutionality of the statute of limitations under the Open Courts Clause of Article I, Section 12 and the Privileges and Immunities Clause of Article I, Section 23 of the Indiana Constitution.[1]

In *Martin v. Richey*, 711 N.E.2d 1273 (Ind.1999) [hereinafter *Martin* ], the lead case we decide today, plaintiff was unable to discover that she had breast cancer and that it had spread to her lymph nodes until more than two years after the asserted negligent misdiagnosis. We rejected her argument that the statute of limitations is unconstitutional on its face, but held instead that it was unconstitutional as applied to the facts of that case. Specifically, we held in *Martin* that, under Article I, Section 12, the two-year occurrence-based statute of limitations may not constitutionally be applied to preclude the filing of a claim before a plaintiff either knows of the malpractice and resulting injury, or discovers facts, which in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting

injury. To do so would be to impose an impossible condition on her access to the courts and pursuit of her tort remedy. We also held that Article I, Section 23, as interpreted by *Collins v. Day*, 644 N.E.2d 72, 80 (Ind.1994), requires that the statute of limitations be "uniformly applicable" to all medical malpractice victims, and that, therefore, the statute could not be applied to preclude a plaintiff from filing a claim simply because she has a disease which has a long latency period and which may not manifest significant pain or debilitating symptoms until several years after the asserted misdiagnosis.

■ As we discuss more fully below, plaintiff and appellee below, William H. Stotts ("Stotts"), like the plaintiff in *Martin*, suffered from cancer and was unaware that he had cancer and that it had spread to his lymph nodes until more than two years following the alleged negligent act. He also had no information that, in the exercise of reasonable diligence, should have led to the discovery of the alleged malpractice and his resulting condition during the statutory period. Given these undisputed facts, and consistent with our holdings in *Martin*, we agree with the trial court that the two-year occurrence-based medical malpractice statute of limitations may not constitutionally be applied to Stotts.

Our decision on this point does not completely dispose of this appeal, however, because this case also requires us to determine how generally to construe or reconstrue the statute of limitations to avoid its unconstitutional application in this case and in future cases. Then we must apply the statute, as we have construed it, to the specific facts here.

We conclude that section 34–18–7–1(b) permits plaintiffs like Martin and the Stottses to file their claims within two years of the date when they discover the malpractice and the resulting injury or facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury. We also conclude that in this

---

**1.** *See Martin v. Richey*, 711 N.E.2d 1273 (Ind. 1999) (holding statute unconstitutional as applied), *aff'g* 674 N.E.2d 1015 (Ind.Ct.App.1997) (holding statute unconstitutional); *Johnson v.* *Gupta*, 682 N.E.2d 827 (Ind.Ct.App.1997) (holding statute constitutional), *trans. granted, opinion vacated*, 698 N.E.2d 1192 (Ind.1998).

case the two-year period was triggered when, in January of 1995, Dr. Allen informed Stotts that he had incurable cancer and that the biopsy slides may have been misread in 1992. Plaintiffs' claim of medical malpractice, therefore, was timely filed within the two-year statutory period.

Accordingly, we affirm the trial court's decision granting summary judgment for plaintiffs and denying defendants' motion. We remand for further proceedings not inconsistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

The facts in this case are undisputed. William H. Stotts went to his family doctor in June of 1992 because he had a head cold, and, while he was there, his doctor did a routine examination of his prostate. Because his doctor thought that his prostate felt somewhat abnormal, he did a PSA blood test, and the blood test showed an elevation that might indicate that Stotts had prostate cancer. Although Stotts had no other symptoms of prostate cancer, his doctor referred Stotts to Dr. Robert Allen, a urologist, for a follow-up evaluation and Dr. Allen examined Stotts in July 1992. He found a very small tumor, performed a needle biopsy on the tumor, and sent the sample to the Columbus Regional Hospital Pathology Department ("hospital") to determine whether the cells were malignant.

Appellant Dr. Delbert Van Dusen and appellant Dr. David O'Brien, who, together with the hospital, were defendants below ("defendants"), read the biopsy. In a report dated July 24, 1992, Dr. Van Dusen noted that, although there were some cells that were mildly atypical, the tissue was benign. On July 27, 1992, Dr. O'Brien confirmed Dr. Van Dusen's diagnosis that the tissue was benign. Dr. Allen relied on this diagnosis, and his office informed Stotts and his wife that the biopsy results showed no cancer. Stotts was relieved.

Around Thanksgiving of 1994, Stotts experienced pain and swelling in his groin area and his lower back. When pain medication and ice packs did not eliminate his pain or relieve the swelling, Stotts's doctor, who suspected a lumbar strain, referred him for a CT scan and ordered another PSA blood test. The CT scan showed an abnormality and the PSA blood levels were high. A follow-up bone scan suggested that metastasis was a possibility. Stotts's doctor then referred him again to Dr. Allen in January of 1995. After reviewing all of his tests and examining Stotts, Dr. Allen concluded that Stotts had metastatic disease; that the metastatic disease was the result of his prostate tumor, which previously had been reported as noncancerous; and that the cancer had spread to his lymph nodes and bones. Dr. Allen informed Stotts that he had incurable prostate cancer.

At the time Dr. Allen diagnosed his prostate cancer on or about January 25, 1995, Stotts and his wife inquired as to whether the initial biopsy in 1992 was improperly read, and Dr. Allen stated that this was a possibility.

Dr. Allen treated Stotts with monthly injections until he became too sick to work and lost his health insurance. When Stotts could no longer afford the monthly injections, he opted for the one-time expense of surgical castration, which occurred in March of 1995. For a while his cancer was isolated, but by December 1995, his cancer had begun to spread again.

In January of 1996, Stotts's urologist had the 1992 biopsy reread by a pathologist at the hospital, and that pathologist read the biopsy as malignant. In February of 1996, Dr. Allen informed Stotts that he likely had three to six months to live. Dr. Allen also informed Stotts that he had had the 1992 biopsy slides reread, that they showed a malignancy, and that they had been badly misread in 1992.

Two months later, on April 3, 1996, Stotts and his wife filed a complaint alleging negligence with the Indiana Department of Insurance. That complaint named Columbus Regional Hospital and "Dr. X" as defendants. Thereafter they filed several amended complaints. On April 10, 1996, they filed a second amended complaint in which Dr. Van Dusen was first named as a defendant, and, on July 30, 1996, they filed a fourth amended

complaint which added Dr. O'Brien as a defendant. Specifically, Stotts alleged that in July 1992, the hospital and Drs. Van Dusen and O'Brien negligently failed to diagnose Stotts's prostate cancer; that had the biopsy been properly read in 1992, Stotts's cancer would have been extremely treatable; and that, as the result of the misdiagnosis, Stotts will die of cancer. William Stotts, in fact, did die shortly before argument on the cross-motions for summary judgment in this case.

On September 19, 1996, the Stottses filed a complaint for declaratory judgment requesting that the court declare the two-year medical malpractice statute of limitations, Indiana Code section 34–18–7–1(b), unconstitutional on its face under Article I, Section 12 and Article 1, Section 23 of the Indiana Constitution. Defendants moved for a preliminary determination of law and summary judgment on the statute of limitations question, and plaintiffs opposed defendants' motion for summary judgment and also moved for summary judgment in their favor.

After holding a hearing on the cross-motions for summary judgment, the trial court granted the Stottses' motion for summary judgment. Specifically, the court held that the two-year occurrence-based statute of limitations was unconstitutional as applied to the facts of the case upon which there is no genuine issue of material fact. The court reasoned that the undisputed evidence establishes that "plaintiffs did not and could not have known, discovered or ascertained, even with the use of reasonable care, that the cancer, which was allegedly misdiagnosed on July 14, 1992, existed during the limitations period provided by IND. CODE § 27–12–7–1." (R. at 279–80.) The court emphasized that "a statute of limitations cannot run and expire before the injured party has any way to discover or ascertain that he has been injured or that a tort has occurred." (R. at 280.)

Defendants challenge the decision below. This Court has jurisdiction pursuant to Indiana Appellate Rule 4(A)(8), which grants this Court the authority to directly review a case in which an Indiana statute has been declared unconstitutional.

## DISCUSSION

The trial court correctly concluded that the two-year medical malpractice statute of limitations, section 34–18–7–1(b), as previously construed, is unconstitutional as applied to plaintiffs. The trial court, however, did not address how that statute might be construed or reconstrued to avoid its unconstitutional application in this case or future cases. We do so today and then apply the statute, as so construed, to the facts of this case.

In Part I, we conclude that section 34–18–7–1(b) should be construed to permit plaintiffs like Martin and the Stottses to file their claims within two years of the date when they discover the malpractice and the resulting injury or facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury. In Part II, we apply this general rule and conclude that, in this case, the two-year period was triggered when, in January of 1995, Dr. Allen informed Stotts that he had incurable cancer and that the biopsy slides may have been misread in 1992. Plaintiffs' claim of medical malpractice, therefore, was timely filed within the two-year statutory period.

### I.

Defendants argue essentially that, if this Court concludes that the statute is unconstitutional, then there is no legal statutory time period applicable to plaintiff. Defendants assert that this Court should not usurp legislative authority by simply creating one and at the same time urge this Court to allow plaintiffs only a reasonable period of time from discovery to file suit as it would in a case involving the equitable doctrine of fraudulent concealment. In that context, this Court has held that a plaintiff who invokes the doctrine of fraudulent concealment does not have two full years from the discovery of the alleged malpractice in which to file a claim. See Hughes v. Glaese, 659 N.E.2d 516, 519 (Ind.1995). Rather, this Court has stressed that "[e]quity supplies what equity requires," and that, therefore, although equitable grounds may exist for estopping a defendant from claiming the statute of limitations as a defense, estoppel will be denied

unless plaintiff has instituted an action within a "reasonable" time after learning of the malpractice or after discovering information which, in the exercise of reasonable diligence, would lead to the discovery of the malpractice. *Cacdac v. Hiland,* 561 N.E.2d 758, 759 (Ind.1990), adopting *Hospital Corp. of America v. Hiland,* 547 N.E.2d 869, 873 (Ind.Ct. App.1989).

Defendants further argue that the medical malpractice statute of limitations should be construed as requiring plaintiff to file a medical malpractice claim within a reasonable period of time after discovering the malpractice and, citing *Spoljaric v. Pangan,* 466 N.E.2d 37, 45 (Ind.Ct.App.1984), that a period of time that exceeds one year is unreasonable as a matter of law.[2] Under defendants' theory, plaintiffs' claims are time-barred because they did not file them within one year of discovery of the malpractice, which defendants apparently assume was when Dr. Allen advised Stotts that he had prostate cancer in January of 1995, and because plaintiffs, therefore, failed to file their claim within a reasonable time.

We cannot accept defendants' argument because, as plaintiffs point out, they have not raised the equitable doctrine of fraudulent concealment. More importantly, however, defendants' argument is based on the erroneous assumption that, if we conclude that the trial court improperly granted summary judgment for defendants, we will strike the statute down as unconstitutional on its face. We, however, determined in *Martin* that the statute is not unconstitutional on its face and have declared only that certain applications are unconstitutional. We, therefore, need not resort to equity to establish constraints

upon the filing of medical malpractice claims by a plaintiff such as Stotts.

■ Rather than simply ignoring the statute of limitations and its two-year time period, as defendants would have us do, the better course is to construe or reconstrue the statute in such a way as to further the purposes of the legislature without offending the Indiana Constitution. To the extent that the legislature intended to create a statute of limitations that always runs from the date of the occurrence of the alleged negligent act, even when the malpractice and resulting injury cannot be discovered during the limitations period given the nature of the asserted malpractice and the medical condition, then, of course, we cannot effectuate this particular legislative intent without doing violence to the Indiana Constitution.[3] *See Martin,* 711 N.E.2d at 1284–85. We, however, can and should seek to construe or reconstrue the statute of limitations, within the bounds of state constitutional constraints, in such a way as to effectuate the more general and overall purpose of the legislature, that is, to maintain sufficient medical treatment and to control malpractice insurance costs by various means, including the encouragement of prompt presentation of claims. *See Rohrabaugh v. Wagoner,* 274 Ind. 661, 666–67, 413 N.E.2d 891, 894–95 (1980); *Johnson v. St. Vincent Hosp., Inc.,* 273 Ind. 374, 379–80, 404, 404 N.E.2d 585, 589–90, 604 (1980).

Even if defendants' proposed approach were not more fundamentally flawed, we must reject it because it does not further effectively the legislature's general purpose. The "reasonable" time frame defendants have proposed is not only inconsistent with the language of the statutory provision which

**2.** This Court has never adopted *Spoljaric v. Pangan,* 466 N.E.2d 37 (Ind.Ct.App.1984). We also have not adopted defendants' approach to analyzing a "reasonable" time frame for pursuing a claim when fraudulent concealment has been asserted. Defendant's approach, as we understand it, would essentially create a presumption that anything more than one year is unreasonable as a matter of law. Because we reject defendants' argument that plaintiffs' claim must be filed within a reasonable time after discovery, this case affords us no opportunity to consider whether this Court should create a presumption that filing a claim within one year (or two years)

of discovery is presumptively reasonable when fraudulent concealment has been asserted.

**3.** *See Toth v. Lenk,* 164 Ind.App. 618, 620–21, 330 N.E.2d 336, 338 (1975) (reasoning that, in drafting the medical malpractice statute of limitations, the legislature intended to avoid the impact of the line of cases holding that the accrual of a cause of action extends the time for commencing an action even when the injury does not manifest itself until long after the act giving rise to the injury and that the legislature did not intend actual discovery to be the event that triggers the commencement of the statutory period).

sets out a two-year time period, but it does not provide plaintiffs with a definite time period or deadline that would spur them to promptly file their claims, as the legislature intended.

Our task of finding a construction of section 34–18–7–1(b) which utilizes the two-year period established by the legislature and furthers the general legislative goals without running afoul of the state constitution, is aided by reviewing general rules we have utilized in other similar contexts.

While we have rejected defendants' argument that plaintiffs should have a "reasonable time" from discovery to file their claims, as in fraudulent concealment cases, we do find that those cases provide useful guidance in determining what date triggers the running of the two-year statutory period. When plaintiffs have asserted active fraudulent concealment in the medical malpractice context, this Court has held that the reasonable time period allowed for filing suit begins to run when "a plaintiff discovers the alleged malpractice or discovers information which in the exercise of reasonable diligence would lead to the discovery of the malpractice." *See Hospital Corp. of America,* 547 N.E.2d. at 874–75.

We have utilized similar general rules in cases construing the statute of limitations applicable to other tort and product liability cases, Indiana Code sections 34–1–2–2 (general tort) and 33–1–1.5–5 (product liability) (1998). *See Wehling v. Citizens Nat'l Bank,* 586 N.E.2d 840, 843 (Ind.1992) (holding that the tort statute begins to run when plaintiff "knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another"); *Allied Resin Corp. v. Waltz,* 574 N.E.2d 913, 915 (Ind.1991) (holding that the product liability statute begins to run on the date plaintiff "knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another"); *see also Evenson v. Osmose Wood Preserving Co. of America,* 899 F.2d 701, 703 (7th Cir.1990) (construing Indiana law); *Miller v. A.H. Robins Co.,* 766 F.2d 1102, 1103 (7th Cir.1985) (construing Indiana law); *Burks v. Rushmore,* 534 N.E.2d 1101, 1104 (Ind.1989) (general tort statute); *Barnes v. A.H. Robins Co.,* 476 N.E.2d 84, 87–88 (Ind.1985) (product liability statute); *Degussa Corp. v. Mullens,* 695 N.E.2d 172, 178 (Ind.Ct.App.1998) *trans. granted, opinion vacated,* 706 N.E.2d 178 (Ind.1998).

We now fashion a similar rule of construction here. We construe section 34–18–7–1(b) to permit plaintiffs like Martin and the Stottses—that is, plaintiffs who, because they suffer from cancer or other similar diseases or medical conditions with long latency periods and are unable to discover the malpractice and their resulting injury within the two-year statutory period—to file their claims within two years of the date when they discover the malpractice and the resulting injury or facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury.

## II.

■ Having construed section 34–18–7–1(b) and formulated the general rule for triggering the running of its two-year statutory period, we now apply the general rule here to determine the date on which plaintiff discovered the malpractice and his resulting injury, or facts that should have led to the discovery of the malpractice and his resulting injury.

Defendants suggest that discovery occurred in January of 1995, when Dr. Allen informed Stotts that he had terminal cancer and that the initial biopsy slides may have been misread in 1992. Plaintiffs, however, suggest that discovery did not occur until February of 1996, when Dr. Allen informed him that those biopsy slides, in fact, were badly misread. Because we have determined that a plaintiff has two years from discovery to file a medical malpractice claim, and because plaintiffs filed complaints against the defendant hospital and defendant Van Dusen in April and defendant O'Brien in July of 1996, plaintiffs have timely filed their complaint regardless of whether the triggering date is in January of 1995 or February of 1996. Nevertheless, because the rule we announce today may become especially important in other cases, we complete our analysis of the application of the rule to the facts in

this case and conclude that the two-year time period was triggered in January of 1995.

In determining what date constitutes discovery within the meaning of the rule we announce today, we again look to Indiana cases which have construed the general tort liability and the product liability statutes of limitation. Three of these cases are particularly helpful to our analysis because they highlight the difference between actual knowledge of malpractice and knowledge of facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice, and because they shed light on the kind of facts that, in the exercise of reasonable diligence, should lead to the discovery of the medical malpractice as well as the resulting injury.

In *Evenson v. Osmose Wood Preserving Co. of America,* 899 F.2d 701, 703 (7th Cir. 1990), plaintiff brought a product liability action alleging injuries caused by a wood treatment chemical called chromatic copper arsenate ("CCA"). Plaintiff began working with CCA in 1980 and by 1983 was diagnosed with various conditions including nasal polyps, asthma and allergic rhinitis. His medical problems continued. In February 1985, he asked his doctor to run tests for CCA in his urine because he was concerned that CCA may have been causing his symptoms. *Id.* at 702. In December 1986, he consulted with an attorney who was aware of an expert doctor whose medical opinion was that CCA caused symptoms like those manifested by plaintiff, and in March of 1987, he filed his complaint. *Id.* at 702, 704. Plaintiff argued that the statute of limitations did not begin to run until December 1986 when he was informed by an attorney that an expert had concluded that CCA caused symptoms like those he had experienced and that he had a legal cause of action. Defendant argued that the statute began running in February of 1985, when plaintiff suspected that CCA might be the cause of his problems.

In *Evenson,* the Seventh Circuit, applying Indiana's product liability statute of limitations, reasoned that a person knows or should have discovered the cause of his injury when he has or should have discovered some evidence that there was a "reasonable possibility" that his injury was caused by the act or product of another. *Id.* at 705. The Seventh Circuit emphasized that, while events short of a doctor's firm diagnosis can provide a plaintiff with evidence of a reasonable possibility that another's act or product caused his injuries sufficient to trigger the running of the two-year statutory period, there must be something more than the mere suspicion or speculation by a plaintiff who is without technical or medical knowledge. *Id.* The court concluded that plaintiff's mere suspicions regarding the cause of her medical problems in February of 1985 did not trigger the time period, and that plaintiff's suit was not time barred. *Id.*

In *Allied Resin Corp. v. Waltz,* 574 N.E.2d 913, 915 (Ind.1991), plaintiff sued chemical manufacturers for an injury suffered as the result of exposure to chemicals used in the manufacture of polyurethane products. Plaintiff began working with the chemicals in 1982 and, in 1983, he began experiencing headaches, shortness of breath, loss of energy, mucous drainage, and other symptoms. In 1983 and 1984, a specialist prescribed medication and also performed surgery to correct a deviated septum that the specialist concluded was causing his problems. When he continued to have symptoms, he consulted another doctor, Dr. Jetmore, and asked if the chemical methylethylketone was causing his symptoms, and Dr. Jetmore told him that he did not know. In July 1984, he consulted with an internist, Dr. Erxleben, and the evidence was conflicting as to what this doctor told him. Dr. Erxleben testified at his deposition that he told plaintiff that his symptoms were possibly caused by exposure to chemicals. Plaintiff denied that Dr. Erxleben so advised him. In early 1985, he returned to Dr. Jetmore who determined that his symptoms were caused by plaintiff's allergies to pollens and dust mites and prescribed shots, but when plaintiff had not improved by October 1985, Dr. Jetmore did further testing and referred him to Dr. Burnstein. Dr. Burnstein did still more testing and ultimately, in early 1986, concluded that his symptoms were related to his exposure to the chemicals.

In *Allied,* while this Court agreed with plaintiff that he did not have actual knowledge of the causal relationship between his injury and the chemical products until early 1986 when Dr. Burnstein rendered an affirmative diagnosis, the Court concluded that there was a genuine issue of material fact as to whether plaintiff should have discovered the causal connection in 1984 when Dr. Erxleben testified he informed plaintiff that his symptoms were "possibly caused" by exposure to the chemicals or at some later time. *Id.* at 915. The Court remanded the case for further proceedings and resolution of what we described as a fact-sensitive question. *Id.*

Most recently, in *Degussa Corp. v. Mullens,* 695 N.E.2d 172, 178 (Ind.Ct.App.1998), *trans. granted, opinion vacated,* 706 N.E.2d 178 (Ind.1998), plaintiff brought a negligence and products liability action for lung damage caused by exposure to various chemicals while working at an animal feed company where she mixed various powdered and liquid ingredients into livestock feeds. After she began working at the company in September of 1990, she developed a cough that would improve when she went home and went away on weekends. On March 17, 1991, she went to the emergency room because of breathing difficulties. Then, in March of 1992, she consulted her family doctor and brought with her a labeled bag of one of the chemicals with which she worked. Her doctor told her that there was a possibility that her illness was work-related, and that she needed to further investigate the connection between her illness and her work exposure. *Id.* at 177. Plaintiff, however, did not file her suit until March 25, 1994. *Id.*

In *Degussa,* the Court of Appeals rejected plaintiff's argument that the two-year statute of limitations did not begin to run until March of 1994 when she learned with certainty that her illness was related to her exposure to the chemicals, and concluded that the statute began to run when her doctor informed her of the possible causal link and the need to investigate further. The Court of Appeals reasoned that it was at that point that she should have discovered the causal link, and that it was not necessary that she know with certainty that the chemicals at work were causing her illness. *Id.* at 178.

Informed by this line of cases, we conclude that under the rule we fashion today, the question of when a plaintiff discovered facts which, in the exercise of reasonable diligence, should lead to the discovery of the medical malpractice and resulting injury, is often a question of fact. *See, e.g., Burks,* 534 N.E.2d at 1104–05; *Allied Resin Corp.,* 574 N.E.2d at 915. In general, however, a plaintiff's lay suspicion that there may have been malpractice is not sufficient to trigger the two-year period. *See Evenson,* 899 F.2d at 705. At the same time, a plaintiff need not know with certainty that malpractice caused his injury, to trigger the running of the statutory time period. *See Degussa Corp.,* 695 N.E.2d at 178. Moreover, when it is undisputed that plaintiff's doctor has expressly informed a plaintiff that he has a specific injury and that there is a reasonable possibility, if not a probability, that the specific injury was caused by a specific act at a specific time, then the question may become one of law. Under such circumstances, generally a plaintiff is deemed to have sufficient facts to require him to seek promptly any additional medical or legal advice needed to resolve any remaining uncertainty or confusion he may have regarding the cause of his injury and any legal recourse he may have, and his unexplained failure to do so should not excuse a failure to timely file a claim. *See Degussa Corp.,* 695 N.E.2d at 178 (quoting *United States v. Kubrick,* 444 U.S. 111, 122–23, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)). Thus, in such a case, we conclude that the date on which he receives such information— that is, information that there is a reasonable possibility that a specific injury was caused by a specific act at a specific time—is the date upon which the two-year period begins to run.

An application of the rule here warrants a conclusion that the two-year period for filing a malpractice claim was triggered in January of 1995 and not in February of 1996. It was in February of 1996 that Dr. Allen informed plaintiffs that the 1992 biopsy slides, which he arranged to be reread in January of 1996, were badly misread, and that Stotts had

three to six months to live. This was more than plaintiffs needed to put them on notice that there was a reasonable possibility that Stotts's cancer became incurable as a result of malpractice and that there was a need to investigate why his cancer went undetected. *See Allied Resin Corp.*, 574 N.E.2d at 915. By February of 1996, plaintiffs had actual knowledge of the asserted malpractice. It was in January of 1995, however, that Dr. Allen informed plaintiff that he had incurable prostate cancer, and, in response to questions by plaintiffs, confirmed that the 1992 biopsy may have been improperly read. Prior to being so informed, plaintiffs reasonably assumed that the biopsy slides were properly read in 1992 and simply did not show a malignancy. Once Dr. Allen informed Stotts that he had prostate cancer that had advanced to the point that it was not curable and that it was possible that the biopsy of the tumor was misread, however, plaintiffs were armed with sufficient information to enable them to press Dr. Allen to arrange for the 1992 biopsy slides to be reread or to seek other medical and legal advice. Therefore, it was in January of 1995 that plaintiffs discovered facts which, in the exercise of reasonable diligence, should have lead to the discovery of the malpractice. The two-year period began to run at that point.

Although we have rejected plaintiffs' suggested trigger date, their claim nevertheless was timely filed as a matter of law because plaintiffs filed their complaints in April and July of 1996, within two years of January 25, 1995 when they discovered that Stotts had incurable prostate cancer and that the 1992 biopsy slides may have been misread.

### CONCLUSION

Accordingly, we affirm the decision below granting plaintiffs' motion for summary judgment and denying defendants' motion. We remand for further proceedings not inconsistent with this opinion.

DICKSON and BOEHM, JJ., concur.

SULLIVAN, J., concurs with separate opinion in which SHEPARD, C.J., joins.

SULLIVAN, Justice, concurring.

While I did not join the decision today in *Martin v. Richey*, 711 N.E.2d 1273 (Ind. 1999) (Sullivan, J., concurring in result), I consider its interpretation of art. I, § 12, and art. I, § 23, of the Indiana Constitution *stare decisis* for purposes of this opinion and for that reason concur.

SHEPARD, C.J., joins.