## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 16 2018, 10:05 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael A. Barranda
Burt, Blee, Dixon, Sutton & Bloom, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE
ANONYMOUS PHYSICIAN

Scott P. Whonsetler
Whonsetler & Johnson, PLLC
Louisville, Kentucky

ATTORNEYS FOR APPELLEE
ANONYMOUS HOSPITAL 1

Jason A. Scheele
Lauren R. Deitrich
Rothberg Logan & Warsco LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE
ANONYMOUS HOSPITAL 2

Joseph D. McPike, II
Zeigler Cohen & Koch
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| Eric Musselman, | July 16, 2018 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 18A-PL-440 |
| v. | Appeal from the Allen Superior Court |
| Anonymous Physician, et al., | The Honorable Craig J. Bobay, Special Judge |
| *Appellees-Defendants.* | Trial Court Cause No. 02D03-1706-PL-187 |

**Bailey, Judge.**

# Case Summary

Eric Musselman ("Musselman") filed a proposed complaint with the Indiana Department of Insurance alleging that Anonymous Physician, Anonymous Hospital 1, and Anonymous Hospital 2 (collectively, the "Health Care Providers") committed medical malpractice.[1] The Health Care Providers sought summary judgment in the Allen Superior Court, alleging that the complaint was time-barred. Following a hearing, the trial court entered summary judgment for the Health Care Providers, and denied Musselman's

---

[1] We note that the appendix does not include a Chronological Case Summary or an unredacted version of Musselman's amended complaint. However, we discern from the record that Musselman also alleged that Anonymous Medical Group 1 committed medical malpractice; it appears from the appealed order that, at some point, this party was dismissed pursuant to Indiana Trial Rule 41(E).

motion to reconsider. Musselman now appeals, challenging the trial court's decision to grant summary judgment for the Health Care Providers.

[2] We affirm.

## Facts and Procedural History

[3] In October 2013, Musselman went to an emergency room, reporting painful urination. Musselman was fourteen years old at the time. A physician ordered a CT scan, which revealed the presence of a "retained wire or catheter" inside Musselman. App. Vol. II at 18. The physician opined that the unidentified foreign object was unrelated to Musselman's pain, and that the object was "probably something left over" from when Musselman was an infant. *Id.* at 21.

[4] Musselman's parents were concerned that the object could move. They followed up with Musselman's pediatrician, Anonymous Physician, in November 2013. Anonymous Physician discussed the CT scan and advised against further treatment. Musselman's parents were informed that it would be dangerous to surgically identify or remove the object, as it was close to Musselman's heart. They were also advised not to pursue an MRI to identify the object, which could be dangerous if the object was a wire and not a plastic catheter. Anonymous Physician ordered a second CT scan, which indicated that the object had not moved, and the results of that scan were left in a voicemail message for Musselman's parents in early 2014.

[5] Through October 2015, Musselman remained in the care of Anonymous Physician, who continued to assure the family that "everything was fine," and that "no further treatment can or should be done with respect to the foreign object." *Id.* at 49. On February 3, 2017, Musselman filed a proposed complaint for damages with the Indiana Department of Insurance, alleging that the Health Care Providers committed medical malpractice. In his amended complaint, Musselman alleged that he underwent a procedure as an infant during which a catheter was inserted, and that the Health Care Providers "failed to remove all of the catheter, and failed to otherwise identify the missing piece of catheter." *Id.* at 16-17. Musselman claimed that he was permanently injured, and sought compensation for physical and emotional damages as well as medical expenses.

[6] In accordance with Indiana Code Section 34-18-11-1, the Health Care Providers pursued summary judgment in the Allen Superior Court, asserting that Musselman's proposed complaint was filed outside the statute of limitations. Following a hearing, the trial court granted summary judgment in favor of the Health Care Providers. Thereafter, Musselman filed his Plaintiff's Motion to Correct Error and Motion to Reconsider, which the trial court denied.

[7] Musselman now appeals.

# Discussion and Decision

[8] In general, we review a trial court's ruling on a motion to correct error for an abuse of discretion, which occurs when the court's decision is clearly against

the logic and effect of the facts and circumstances before it. *Sims v. Pappas*, 73 N.E.3d 700, 705 (Ind. 2017). To determine whether the court abused its discretion by denying Musselman's motion to correct error, we must determine whether the court erred by entering summary judgment in favor of the Health Care Providers. Summary judgment is appropriate only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We review *de novo* whether the trial court properly granted summary judgment. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

[9] "Indiana's distinctive summary judgment standard imposes a heavy factual burden on the movant to demonstrate the absence of any genuine issue of material fact on at least one element of the claim." *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016). Summary judgment is inappropriate if the movant fails to carry this burden. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). However, if the movant succeeds, the burden shifts to the non-moving party to designate contrary evidence demonstrating the existence of a genuine issue of material fact. *Id.* In conducting our review, we look only to the designated evidence, T.R. 56(H), and construe all factual inferences in favor of the party who did not seek summary judgment, *Manley*, 992 N.E.2d at 673.

[10] In Indiana, a plaintiff generally must bring a claim of medical malpractice "within two (2) years after the date of the alleged act, omission, or neglect." Ind. Code § 34-18-7-1. Nonetheless, this occurrence-based "trigger date will be tolled as a matter of law when the alleged malpractice was not reasonably

discoverable within the limitations period." *Herron v. Anigbo*, 897 N.E.2d 444, 450-51 (Ind. 2008). Indeed, this tolling occurs where—as here—the alleged "injury remains latent for an extended period after the alleged malpractice." *Id.* at 451. In these cases, the trigger date is established "when it is clear that the plaintiff knew, or should have known, of the alleged symptom or condition, and [of] facts that in the exercise of reasonable diligence would lead to discovery of the potential of malpractice." *Id.* at 450.

[11] "Like many legal issues turning on 'reasonable' conduct, the determination of the trigger date may raise issues of fact but often may be resolved as a matter of law." *Id.* (citing *Van Dusen v. Stotts*, 712 N.E.2d 491, 499 (Ind. 1999)). Indeed, "the trigger date is established as a matter of law when a patient is told by a doctor of the 'reasonable possibility, if not a probability, that the specific injury was caused by a specific act at a specific time.'" *Id.* at 450 (quoting *Van Dusen*, 712 N.E.2d at 499). In these circumstances,

> generally a plaintiff is deemed to have sufficient facts to require him to seek promptly any additional medical or legal advice needed to resolve any remaining uncertainty or confusion he may have regarding [1] the cause of his injury and [2] any legal recourse he may have, and his unexplained failure to do so should not excuse a failure to timely file a claim.

*Van Dusen*, 712 N.E.2d at 499.  Furthermore, when the patient is a child, we impute to the child "the parents' knowledge of facts" pertinent to triggering the two-year period.  *Ledbetter v. Hunter*, 842 N.E.2d 810, 815 (Ind. 2006).[2]

[12]    In granting summary judgment for the Health Care Providers, the trial court concluded that the two-year statute of limitations began to run in 2013, when Musselman's parents learned of the foreign object.  On appeal, Musselman argues that there is insufficient evidence to establish a trigger date as a matter of law because his parents could not determine the "nature of the object, who placed it, and who was responsible for its removal."  Appellant's Br. at 8.

[13]    For support, Musselman directs us to *Zelman v. Cent. Ind. Orthopedics, P.C.*, 88 N.E.3d 798 (Ind. Ct. App. 2017), *trans. denied*.  There, a patient experienced post-operative pain for several years, and initially declined to undergo an intrusive exploratory surgery that might have identified the source of the pain. *Zelman*, 88 N.E.3d at 799-802.  The patient later underwent the exploratory surgery, and learned that her first surgeon may have committed malpractice. *Id.* at 800-01.  The patient filed a proposed complaint alleging medical malpractice within two years of the exploratory surgery, but more than four

---

[2] Separate from caselaw, generally, when a cause of action for a tort claim has accrued while the victim is a minor, the statute of limitations is tolled until the victim reaches the age of majority.  *See* I.C. § 34-11-6-1 ("A person who is under legal disabilities when the cause of action accrues may bring the action within two (2) years after the disability is removed.").  Here, Musselman brought his action upon turning eighteen.  Yet, our legislature has created a more stringent framework for medical malpractice claims, providing only that "a minor less than six (6) years of age has until the minor's eighth birthday to file" an accrued claim.  I.C. § 34-18-7-1.

years after the onset of post-operative pain. *Id.* at 799-802. Concluding that the action was untimely, the trial court granted summary judgment in favor of the surgeon. *Id.* at 802. This Court reversed, determining that a genuine issue of material fact existed as to when the patient's "pain and diligent pursuit would have led her to discover that medical malpractice was the cause." *Id.* at 804.

[14] Whereas, in *Zelman*, the patient experienced ongoing post-operative pain of unknown origin, here, the undisputed evidence indicates that a physician informed Musselman's parents that there was a foreign object inside their son. A second CT scan confirmed the presence of the object, and Musselman's parents were informed that the object appeared to be a wire or a catheter left behind "at some time during [Musselman's] care and treatment." App. Vol. II at 49. This was sufficient information to put Musselman's parents on notice of the "reasonable possibility, if not a probability," that medical malpractice had occurred. *Van Dusen*, 712 N.E.2d at 499. By knowing of the presence of the object—irrespective of whether it has ever been feasible to definitively identify the object—Musselman's parents could have, with reasonable diligence, explored the possibility of legal recourse. Indeed, it is telling that, at the time he filed the instant claim, Musselman appears to have had no more material information than his parents had in 2013. Thus, contrary to Musselman's assertion, his parents need not have "ignore[d] Anonymous Physician's advice" and underwent "dangerous medical treatment" to pursue a claim of medical malpractice. Appellant's Br. at 13.

[15] Musselman next argues that the statute of limitations should be tolled by the doctrine of continuing wrong. This doctrine "is not an equitable doctrine; rather, it defines when an act, omission, or neglect took place." *Boggs v. Tri-State Radiology, Inc.*, 730 N.E.2d 692, 699 (Ind. 2000). "For the doctrine to apply, the physician's conduct must be more than a single act." *Anonymous Physician v. Rogers*, 20 N.E.3d 192, 198 (Ind. Ct. App. 2014), *trans. denied*. That is, the doctrine applies "where an entire course of conduct combines to produce an injury." *Boggs*, 730 N.E.2d at 699. "When this doctrine attaches, the statute of limitations does not begin to run until the wrongful act ceases, and at that point the plaintiff may bring the claim within the normal statutory period." *Id.*

[16] Here, however, the act that produced the alleged injury—the abandonment of the foreign object—was an isolated event, not part of an entire course of conduct. Thus, the doctrine of continuing wrong does not apply. *See Babcock v. Lafayette Home Hosp., Woman's Clinic*, 587 N.E.2d 1320, 1323 (Ind. Ct. App. 1992) (finding the doctrine inapplicable where the alleged injury was the retention of a surgical sponge inside the patient, determining that leaving the sponge behind and, later, misreading a chest x-ray were "isolated" events).

[17] Finally, Musselman asserts that a defense based upon the statute of limitations should not be available to the Health Care Providers because of the equitable doctrine of fraudulent concealment. Under this doctrine, "a person is estopped from asserting the statute of limitations as a defense if that person, by deception or violation of a duty, has concealed material facts from the plaintiff and thereby prevented discovery of a wrong." *Boggs*, 730 N.E.2d at 698. When the

doctrine of fraudulent concealment applies, it imposes a "duty of diligence" on the plaintiff to act within a reasonable time following the actual discovery of the malpractice or the reasonable opportunity to discover the malpractice. *Hughes v. Glaese*, 659 N.E.2d 516, 519 (Ind. 1995).

[18] Musselman directs our attention to evidence indicating that Anonymous Physician gave assurances that Musselman was fine. Musselman argues that Anonymous Physician "downplayed the nature of the injuries" and "dissuaded" the Musselmans from taking further action to identify the object lodged close to Musselman's heart. Appellant's Br. at 12. Yet, for the doctrine to apply, there must be evidence of active or constructive concealment, *see Boggs*, 730 N.E.2d at 698, and, here, the designated evidence contains no indication that any of the Health Care Providers concealed material information. Rather, the evidence indicates that Anonymous Physician discussed the first scan with Musselman's parents, ordered a second scan, and did not conceal the results of either scan. Thus, as there was no concealment preventing the discovery of a wrong, this doctrine is inapplicable. Moreover, to the extent that Musselman is arguing that Anonymous Physician constructively concealed information by failing to discover the foreign object sooner, it was unreasonable to wait more than two years to initiate the malpractice claim. *See Cacdac v. Hiland*, 561 N.E.2d 758, 759 (Ind. 1990) (determining that a delay of twenty-two months in bringing a medical malpractice claim was unreasonable).

[19] We ultimately conclude, as a matter of law, that Musselman's two-year period to bring a claim of medical malpractice began running in 2013 when his parents

learned of the foreign object. At that point, the family had enough information to require them to seek further medical or legal advice. *See Van Dusen*, 712 N.E.2d at 499. Thus, because Musselman filed his complaint in 2017, the action was untimely, and the Health Care Providers were entitled to summary judgment. We accordingly conclude that the court did not abuse its discretion by denying Musselman's motion to correct error because the court did not err in granting summary judgment in favor of the Health Care Providers.

[20] Affirmed.

Vaidik, C.J., and Pyle, J., concur.