**Kirit C. SHAH, M.D., Appellant–Defendant,**

v.

**Stan HARRIS and Nancy Harris, Appellees–Plaintiffs.**

No. 82A01–0103–CV–111.

Court of Appeals of Indiana.

Nov. 16, 2001.

Rebecca T. Kasha, Kinney, Kasha & Buthod, LLP, Evansville, Indiana, Attorney for Appellant.

Glenn A. Deig, Evansville, Indiana, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Dr. Kirit C. Shah ("Dr. Shah") appeals the trial court's order denying his motion for summary judgment. Dr. Shah raises the following issue: whether the trial court erred when it found a genuine issue of material fact regarding whether Stan and Nancy Harris ("Harrises") filed their complaint within the applicable two-year statute of limitations. We agree that there remain no genuine issues of material facts regarding the statute of limitations. However, we believe that the Harrises timely filed their complaint and accordingly, we affirm the trial court's denial of Dr. Shah's summary judgment motion and remand to the trial court for entry of summary judgment in favor of the Harrises on this issue. We hand this case down with a companion case, *Rogers v. Mendel,* 758 N.E.2d 946 (Ind.Ct.App.2001), which raises essentially the same issues but with a different result, reached by a different panel of this court.

### Facts and Procedural History

The facts most favorable to the trial court's judgment reveal that Dr. Shah, a neurologist, first treated Stan Harris on June 20, 1991. Dr. Shah diagnosed Harris with multiple sclerosis on July 11, 1991, and continued to treat Harris until April 12, 1993, at which time Dr. Shah relocated outside of the area. Thereafter, Harris sought treatment from other physicians. Then on July 31, 1998 (almost exactly seven years after the original, erroneous diagnosis), another physician diagnosed Harris' illness as a vitamin B–12 deficiency, rather than multiple sclerosis.

On July 24, 2000 (one week less than two years from the date of the second diagnosis), the Harrises simultaneously filed their Proposed Medical Malpractice Complaint with the Indiana Department of Insurance, and their Complaint in Vanderburgh Circuit Court against Dr. Shah. On December 14, 2000, Dr. Shah filed a motion for summary judgment. After briefing was completed, the trial court held a hearing on January 30, 2001, after which it denied Dr. Shah's summary judgment motion because it found genuine issues of material fact as to whether the Harrises timely filed their complaint.

On February 15, 2001, the trial court certified its summary judgment order for interlocutory appeal. On April 2, 2001, this court accepted Dr. Shah's permissive interlocutory appeal.

## Standard of Review

Summary judgment is a procedural means to halt litigation when there are no factual disputes and to allow the case to be determined as a matter of law. *LeBrun v. Conner*, 702 N.E.2d 754, 756 (Ind.Ct.App. 1998). Under Indiana Trial Rule 56, the moving party bears the burden of showing that there are no genuine issues of material fact. If the moving party meets its burden, the burden shifts to the non-moving party to set forth facts showing the existence of a genuine issue for trial. Ind. Trial Rule 56(C), 56(E); *Oelling v. Rao*, 593 N.E.2d 189, 190 (Ind.1992).

Summary judgment is appropriate only if there is no evidence of a genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. *Aide v. Chrysler Fin. Corp.*, 699 N.E.2d 1177, 1180 (Ind.Ct.App. 1998), *trans. denied.* However, summary judgment is inappropriate if any material facts are in dispute or even if undisputed facts could "lead to conflicting material inferences." *Butler v. City of Indianapolis*, 668 N.E.2d 1227, 1228 (Ind.1996). Additionally, when a party files a motion for summary judgment, that movant bears the risk of entry of summary judgment in favor of the non-movant, even though the non-movant has not filed a cross-motion for summary judgment. Ind. Trial Rule 56(B).

If the moving party asserts the statute of limitations as an affirmative defense and establishes that the action was commenced outside of the statutory period, the non-moving party then has the burden of establishing an issue of fact material to a theory that avoids the affirmative defense. *Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692, 695 (Ind. 2000) (citing *Conard v. Waugh*, 474 N.E.2d 130, 134–35 (Ind.Ct.App.1985)).

## Discussion and Decision

Dr. Shah argues that he is entitled to summary judgment because the Harrises failed to file their complaint within the two-year, occurrence-based limitations period for medical malpractice suits. He asserts that the trial court first erroneously interpreted the occurrence-based statute of limitations as a discovery-based statute of limitations and then erroneously applied the exception to the medical malpractice statute to this case. Dr. Shah contends that the Harrises should have filed their complaint at the latest within two years of April 12, 1993, the last date Harris was under Dr. Shah's care. Therefore, Dr. Shah argues that the Harrises' filing of their proposed complaint on July 24, 2000, is approximately five years too late and barred by the statute of limitations.

The statute of limitations for medical malpractice claims is found at Indiana Code section 34–18–7–1(b):

> b) A claim, whether in contract or tort, may not be brought against a health care provider based upon professional service or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect, except that a minor less than six (6) years of age has until the minor's eighth birthday to file.

Ind.Code § 34–18–7–1(b) (1998). This occurrence-based statute of limitations has been upheld as constitutional on its face under the Indiana Constitution, Article I, Sections 12 and 23, but has also been held to be unconstitutional as applied in certain circumstances. *Van Dusen v. Stotts*, 712 N.E.2d 491, 493 (Ind.1999); *Martin v. Richey*, 711 N.E.2d 1273, 1284–85 (Ind. 1999). This statute requires the filing of a medical malpractice action within two

years of the alleged negligent act and has been upheld as constitutional when applied to all plaintiffs able to discover the alleged malpractice and injury within two years from the occurrence. *See Martin*, 711 N.E.2d at 1278.

In *Martin*, on March 13, 1991, Martin went to her gynecologist's office, Dr. Richey, complaining of a lump and "shooting pains" in her right breast. Because Richey was out of town, a nurse practitioner examined Martin and arranged for her to have a mammogram at the hospital that same day. The radiologist who read the report noted that Martin had a benign cyst above the nipple in the right breast and a "solid echogenic mass in the lower quadrant of the right breast." In the report, the radiologist advised that a biopsy be done on the mass. *Id.* at 1274–75.

On March 14, the next day, the nurse practitioner called Martin to inform her of the mammogram results and the radiologist's recommendation that she have a biopsy conducted on the mass. Then on the following day, March 15, Martin called the nurse practitioner to inform her that she had scheduled an excisional biopsy with a general surgeon in four days, on March 19. Martin also left a message for Richey to call her upon his return to his office. *See id.* at 1275.

On March 18, when Richey returned to his office, the nurse practitioner informed him of all the events surrounding Martin's exam and mammogram and that Martin had already scheduled a biopsy for the following day with a general surgeon. Richey then called Martin that evening and told her to cancel the scheduled biopsy because he wanted to perform a needle aspiration on her instead. The aspiration occurred in Richey's office on March 20. *See id.* at 1275–76.

Richey first aspirated fluid from the cyst and then using the same needle, attempted to aspirate fluid from the solid mass. Richey was finally able to aspirate fluid on the sixth attempt but was still unsure as to whether the fluid came from the mass or the surrounding tissue. The pathology report indicated no presence of malignant tumor cells in the fluids drawn by Richey. *See id.* at 1276.

Both Martin and the nurse practitioner (who was present during the needle aspiration) testified that at no time did Richey inform Martin that she needed to seek any follow-up treatment, such as a biopsy. And, even though Richey testified that he did in fact advise Martin to seek follow-up testing, there were no notes to this effect in his files. Martin experienced no symptoms and did not seek any further medical treatment or testing for the lump until three years later, in April 1994, at which time she began experiencing increased pain from the lump and pain under her right arm. *See id.* at 1276–77.

In April 1994, Martin had a mammogram, the results of which revealed an abnormal mass in her right breast, located in the same place as the mass identified in the original mammogram in 1991. A biopsy resulted in a diagnosis of adenocarcinoma of the breast and on April 15, 1994, Martin underwent a right modified radical mastectomy. Martin then had to undergo chemotherapy from May 1994 through September 1994 because the cancer had spread to her lymph nodes. Martin filed her complaint against Richey in October 1994. Richey filed a motion arguing that Martin's action was time-barred by the two-year medical malpractice statute of limitations. *See id.* at 1277.

Upon review of Martin's case and the companion case of *Van Dusen*, 712 N.E.2d at 491, the Indiana Supreme Court held that under Article I, Sections 12 and 23 of the Indiana Constitution, the two-year

statute of limitations applicable to medical malpractice claims is unconstitutional as applied to plaintiffs such as Martin, who could not have discovered the injury with reasonable diligence within two years of the alleged misconduct. *Van Dusen*, 712 N.E.2d at 493; *Martin*, 711 N.E.2d at 1282, 1284–85. In order to qualify under this exception, a plaintiff must have "no information that, in the exercise of reasonable diligence, should have led to the discovery of the alleged malpractice and ... resulting condition during the statutory period." *Van Dusen*, 712 N.E.2d at 493. Our supreme court further held in *Van Dusen* that in such cases where this statute of limitations is unconstitutional as applied, a plaintiff is given a full two-year time period within which to file suit, starting from the time "they discover the malpractice and the resulting injury or facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury." *Id.*

In *Van Dusen*, Stotts visited his family doctor in June 1992 for a head cold at which time his doctor performed a routine exam of his prostate. Upon detecting an abnormality, his family doctor then referred Stotts to an urologist, who performed a needle biopsy on a small tumor in Stotts' prostate. The biopsy was sent to the defendant doctors and hospital for diagnosis. In late July 1992, the defendant doctors interpreted the biopsy as benign. The urologist relied on this diagnosis and informed Stotts that the biopsy results showed no cancer. *See id.* at 494.

More than two years later, in November 1994, Stotts experienced pain and swelling in his groin area. He returned to his family doctor who again referred him to the same urologist. In January 1995, the urologist concluded that Stotts had metastatic cancer resulting from a prostate tumor that had possibly been erroneously diagnosed as noncancerous in July 1992. The urologist confirmed the erroneous diagnosis in February 1996. Stotts then filed his complaint against the defendant doctors in April 1996. *See id.*

Our supreme court held that the medical malpractice statute of limitations was unconstitutional as applied to Stotts because he was "unaware that he had cancer and that it had spread to his lymph nodes until more than two years following the alleged negligent act," *id.* at 493, finding January 1995 (when Stotts was told that the biopsy diagnosis was possibly erroneous) the triggering date from which to start the two-year statute of limitations. *Id.* at 494. The court reasoned that Stotts had no information during the two years following the alleged act that could lead a reasonably diligent person to discover the alleged malpractice and resulting injury. *Id.* at 493.

More recently, in *Boggs v. Tri–State Radiology, Inc.*, our supreme court applied the *Martin* and *Van Dusen* rules in upholding the constitutionality of the medical malpractice statute of limitations as applied to a decedent, Boggs, who discovered, or could have discovered with reasonable diligence, the alleged malpractice and resulting injury within the two-year period after the occurrence of the alleged misconduct. *Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692, 694 (Ind.2000). Boggs visited her doctor in July 1991 after detecting a mass in her left breast. Her doctor ordered a mammogram during the first visit and then again in July 1992. Both tests were conducted at the doctor's office and interpreted by Tri–State Radiology. In August 1992, Boggs had a biopsy, which revealed a malignant mass in her left breast. She died in July 1993, and in July 1994, Boggs' husband filed a complaint. *See id.*

Our supreme court held that the claim was barred by the statute of limitations because the alleged malpractice occurred in July 1991, and Boggs discovered the injury in August 1992, which left the Boggs with eleven months before the expiration of the statute of limitations during which to file the complaint. *Id.* at 695. The court acknowledged, "medical malpractice plaintiffs will frequently, if not virtually always, have varying amounts of time within which to file their claims before an occurrence-based statute of limitations expires." *Id.* at 697. Nevertheless, the court found that "[a]s long as the claim can reasonably be asserted before the statute expires, the only burden imposed upon the later discovering plaintiffs is that they have less time to make up their minds to sue." *Id.*

■ In the case before us, Dr. Shah requests that we reverse the trial court because there are no genuine issues of material fact with regard to the timing of the Harrises' filing. We agree that there are no genuine issues of material fact with regard to the statute of limitations issue; however, we find as a matter of law that the Harrises' complaint was filed in a timely manner.

It is undisputed that in July 1991, Dr. Shah diagnosed Harris with multiple sclerosis. Harris' last visit with Dr. Shah was on April 12, 1993, because Dr. Shah moved out of the area. It is also undisputed that Harris remained under the care of other physicians in the following years under the belief that he had multiple sclerosis. In July 1998, one of Harris' physicians allegedly correctly diagnosed his illness as a vitamin B–12 deficiency, rather than multiple sclerosis. Harris received this diagnosis approximately seven years after Dr. Shah's diagnosis (July 1991) and approximately five years after their physician-patient relationship ended (April 1993).

However, Harris had received "no information that, in the exercise of reasonable diligence, should have led to the discovery of the alleged malpractice … during the statutory period." *Van Dusen,* 712 N.E.2d at 493.

In response, Dr. Shah asserts that the *Martin* and *Van Dusen* holdings are distinguishable and not applicable to this case because, he asserts, *Martin* and *Van Dusen* considered diseases with long latency periods, which is not the situation here. We find no case law that would support the restriction of the analysis announced in *Martin* and *Van Dusen* to specific types of diseases, nor do we discern any public policy or common sense reason for doing so.

■ In our consideration of the medical malpractice statute of limitations and its application to the undisputed facts before us, we do not write on a clean slate. *Martin, Van Dusen,* and *Boggs* together create a two-stage analysis for the application of Indiana's two-year, medical malpractice limitation period. If a claimant discovers the alleged malpractice and resulting injury, or possesses information that would lead a reasonably diligent person to such discovery during the two-year period, then the purely occurrence-based, limitation period is both applicable and constitutional, so long as the claim can reasonably be asserted before the period expires. *Boggs,* 730 N.E.2d at 697–98; *Van Dusen,* 712 N.E.2d at 497–98; *Martin,* 711 N.E.2d at 1279–80. This first stage of analysis will be the only analysis required under most facts and circumstances.

■ If, however, a claimant does not discover the alleged malpractice and resulting injury, and does not possess information that would lead a reasonably diligent person to such discovery during the two-year period, then the purely occur-

rence-based, limitation period is unconstitutional as applied. *Van Dusen,* 712 N.E.2d at 497–98; *Martin,* 711 N.E.2d at 1279–80. Under these facts and circumstances, a second stage of analysis must be applied to determine when the claimant possessed enough information that, in the exercise of reasonable diligence, should have led to the discovery of the alleged malpractice and resulting injury. The date determined is the date the two-year limitations period begins to run for such a claimant. *Van Dusen,* 712 N.E.2d at 497–98; *Martin,* 711 N.E.2d at 1279–80.

■ Whether Indiana Code section 34–18–7–1 is constitutional as applied is a question of law to be determined by the trial court on a case-by-case basis. In some instances, this question will be subject to resolution on the basis of undisputed facts, as in the case before us. In other instances, the judge will be required to resolve disputed facts through pre-trial motion practice in order to determine the date upon which the claimant possessed enough information that, in the exercise of reasonable diligence, should have led to the discovery of the alleged malpractice and resulting injury.

In the case before us, the two-year statute of limitations began to run at the latest when Dr. Shah and Harris' physician-patient relationship ended on April 12, 1993. Therefore, under Indiana Code section 34–18–7–1(b), the pure, occurrence-based statutory period of limitation expired on April 12, 1995. However, Dr. Shah cites no evidence and we find no evidence or inference in the record that would create an actual or inferential conflict with the allegation contained in the Harrises' complaint, a document designated by Shah under Indiana Trial Rule 56(c), that Harris did not possess enough factual information for a reasonably diligent person to discover the alleged malpractice and injury until July 31, 1998. *See Boggs,* 730 N.E.2d at 697; *Van Dusen,* 712 N.E.2d at 497; *Martin,* 711 N.E.2d at 1284. Therefore, the second stage of analysis announced in *Van Dusen* applies here to toll the statutory period until Harris discovered the alleged malpractice and the resulting injury or until Harris obtained that information on July 31, 1998, when he learned that his illness may have been misdiagnosed seven years earlier. Harris then had two years within which to file his action, or until July 31, 2000. Harris filed his action on July 24, 2000, within the applicable statutory limitations period.[1]

### Conclusion

Because the Harrises filed their medical malpractice action within the appropriate limitations period, we affirm the trial court's order denying Dr. Shah's motion for summary judgment and remand for entry of summary judgment in favor of the Harrises on the issue of the applicable statutory limitations period.

Affirmed and remanded.

DARDEN, J., and VAIDIK, J., concur.

---

1. Dr. Shah also discusses the theory of fraudulent concealment, which often arises in cases involving statute of limitations issues. *See Hughes v. Glaese,* 659 N.E.2d 516, 519 (Ind. 1995) (discussing active and constructive fraudulent concealment). Because we find that the Harrises timely filed their claim, we do not need to discuss the applicability of this theory, which was not raised or argued by the Harrises to the trial court.