**L. Ralph ROGERS, M.D., Appellant,**

v.

**Ann MENDEL, as Personal Representative of the Estate of Maryetta Mendel, Deceased, and Linus Mendel, Appellees.**

No. 82A04–0103–CV–84.

Court of Appeals of Indiana.

Nov. 16, 2001.

Danny E. Glass, Fine & Hatfield, Evansville, IN, Attorney for Appellant.

Glenn A. Deig, H. Wayne Turpin, Evansville, IN, Attorneys for Appellees.

## OPINION

MATHIAS, Judge.

Dr. L. Ralph Rogers ("Dr. Rogers") appeals the trial court's order denying his motion for summary judgment. Dr. Rogers raises the following issue: whether the trial court erred when it found a genuine issue of material fact regarding whether Ann Mendel and Linus Mendel ("Mendels") filed their complaint within the applicable two-year statute of limitations. We agree with Dr. Rogers and accordingly, we reverse the trial court's denial of Dr. Rogers' summary judgment motion and remand with instructions to enter summary judgment in favor of Dr. Rogers.[1] We hand this case down with a companion case, *Shah v. Harris*, 758 N.E.2d 953 (2001), which raises essentially the same issues but with a different result, reached by a different panel of this court.

### Facts and Procedural History

The facts most favorable to the trial court's judgment reveal that Dr. Rogers performed a hysterectomy on Maryetta Mendel on December 9, 1993. At that time, Dr. Rogers removed a tumor and had a laboratory test run on the tissue. The results from the December 9, 1993 test revealed the presence of carcinoma. Dr. Rogers subsequently met with Maryetta on December 17, 1993 and January 4, 1994, at which time Maryetta was released from Dr. Rogers' care. Although the record indicates that the test results were listed in Dr. Rogers' notes, there is no

---

1. Appellant's motion for oral argument is denied.

indication in the record that Dr. Rogers disclosed to Maryetta the presence of carcinoma in the removed tumor.

Approximately one year later, in January 1995, Maryetta began suffering from abdominal cramping and visited her family doctor, Dr. Elliot. Dr. Elliot referred Maryetta to a colon specialist, who referred her to another doctor, who in turn referred her to Dr. Fox, an oncologist. On March 10, 1995, Dr. Fox informed Maryetta that she had metastatic endometrial cancer. Maryetta began chemotherapy treatment immediately, but it was discontinued because it caused hematologic toxicity. In September 1995, Maryetta was referred to Dr. Moore, a GYN oncologist, who recommended Taxol treatments.

Maryetta received Taxol treatments at least until February 1996, at which point Ann Mendel, Maryetta's daughter, learned that Medicare would not reimburse them for the Taxol treatments. In March 1996, Ann requested medical records from Dr. Rogers in an attempt to gather information to assist her in writing a letter to Medicare to request coverage of Maryetta's Taxol treatments. Upon review of Dr. Rogers' medical records, Ann discovered the December 1993 pathology report that advised of carcinoma in the tumor removed by Dr. Rogers. Dr. Fox assisted Ann in writing the Medicare appeal letter, which was dated April 17, 1996.

On September 15, 1996, Maryetta died of progressive metastatic endometrial cancer. On December 30, 1996, the Mendels filed their Proposed Medical Malpractice Complaint with the Indiana Department of Insurance against Dr. Rogers, and on March 14, 2000, the Medical Review Panel entered a decision in favor of the Mendels, who then filed their Complaint in Vanderburgh Circuit Court on May 31, 2000.

On November 17, 2000, Dr. Rogers filed a motion for summary judgment. After briefing was completed, the trial court held a hearing on January 12, 2001, after which it denied Dr. Rogers' summary judgment motion because it found genuine issues of material fact as to whether the Mendels timely filed their complaint. On February 9, 2001, the trial court certified its summary judgment order for interlocutory appeal and granted a stay of the trial proceedings pending the outcome of the appeal. On March 12, 2000, this court accepted Dr. Rogers' permissive interlocutory appeal.

### Standard of Review

■ Summary judgment is a procedural means to halt litigation when there are no factual disputes and to allow the case to be determined as a matter of law. *LeBrun v. Conner,* 702 N.E.2d 754, 756 (Ind.Ct.App. 1998). Under Indiana Trial Rule 56, the moving party bears the burden of showing that there are no genuine issues of material fact. If the moving party meets its burden, the burden shifts to the non-moving party to set forth facts showing the existence of a genuine issue for trial. Ind. Trial Rule 56(C), 56(E); *Oelling v. Rao,* 593 N.E.2d 189, 190 (Ind.1992).

■ Summary judgment is appropriate only if there is no evidence of a genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. *Aide v. Chrysler Fin. Corp.,* 699 N.E.2d 1177, 1180 (Ind.Ct.App. 1998), *trans. denied.* However, summary judgment is inappropriate if any material facts are in dispute or even if undisputed facts could "lead to conflicting material inferences." *Butler v. City of Indianapolis,* 668 N.E.2d 1227, 1228 (Ind.1996).

■ If the moving party asserts the statute of limitations as an affirmative defense and establishes that the action was commenced outside of the statutory period, the non-moving party then has the

burden of establishing an issue of fact material to a theory that avoids the affirmative defense. *Boggs v. Tri–State Radiology, Inc.,* 730 N.E.2d 692, 695 (Ind. 2000) (citing *Conard v. Waugh,* 474 N.E.2d 130, 134–35 (Ind.Ct.App.1985)).

### Discussion and Decision

Dr. Rogers argues that he is entitled to summary judgment because the Mendels failed to file their complaint within the two-year, occurrence-based limitations period for medical malpractice suits. He asserts that even if the evidence is viewed in the light most favorable to the Mendels, the last date that the Mendels could have filed their proposed complaint with the Department of Insurance was January 4, 1996, two years from the date Maryetta was released from Dr. Rogers' care. Therefore, Dr. Rogers argues that the Mendels' filing of their proposed complaint on December 30, 1996 is barred by the statute of limitations.

The statute of limitations for medical malpractice claims is found at Indiana Code section 34–18–7–1(b):

> b) A claim, whether in contract or tort, may not be brought against a health care provider based upon professional service or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect, except that a minor less than six (6) years of age has until the minor's eighth birthday to file.

Ind.Code § 34–18–7–1(b) (1998). This occurrence-based statute of limitations has been upheld as constitutional on its face under the Indiana Constitution, Article I, Sections 12 and 23, but has also been held to be unconstitutional as applied in certain circumstances. *Van Dusen v. Stotts,* 712 N.E.2d 491, 493 (Ind.1999), *Martin v. Richey,* 711 N.E.2d 1273, 1284–85 (Ind.

1999). This statute requires filing of a medical malpractice action within two years of the alleged negligent act and has been upheld as constitutional when applied to all plaintiffs able to discover the alleged malpractice and injury within two years from the occurrence. *See Martin,* 711 N.E.2d at 1278.

In *Martin,* on March 13, 1991, Martin went to her gynecologist's office, Dr. Richey, complaining of a lump and "shooting pains" in her right breast. Because Richey was out of town, a nurse practitioner examined Martin and arranged for her to have a mammogram at the hospital that same day. The radiologist who read the report noted that Martin had a benign cyst above the nipple in the right breast and a "solid echogenic mass in the lower quadrant of the right breast." In the report, the radiologist advised that a biopsy be done on the mass. *Id.* at 1274–75.

On March 14, the next day, the nurse practitioner called Martin to inform her of the mammogram results and the radiologist's recommendation that she have a biopsy conducted on the mass. Then on the following day, March 15, Martin called the nurse practitioner to inform her that she had scheduled an excisional biopsy with a general surgeon in four days, on March 19. Martin also left a message for Richey to call her upon his return to his office. *See id.* at 1275.

On March 18, when Richey returned to his office, the nurse practitioner informed him of all the events surrounding Martin's exam and mammogram and that Martin had already scheduled a biopsy for the following day with a general surgeon. The gynecologist then called Martin that evening and told her to cancel the scheduled biopsy because he wanted to perform a needle aspiration on her instead. The aspiration occurred in Richey's office on March 20. *See id.* at 1275–76.

Richey first aspirated fluid from the cyst and then using the same needle, attempted to aspirate fluid from the solid mass. Richey was finally able to aspirate fluid on the sixth attempt but was still unsure as to whether the fluid came from the mass or the surrounding tissue. The pathology report indicated no presence of malignant tumor cells in the fluids drawn by Richey. *See id.* at 1276.

Both Martin and the nurse practitioner (who was present during the needle aspiration) testified that at no time did Richey inform Martin that she needed to seek any follow-up treatment, such as a biopsy. And, even though Richey testified that he did in fact advise Martin to seek follow-up testing, there were no notes to this effect in his files. Martin experienced no symptoms and did not seek any further medical treatment or testing for the lump until three years later, in April 1994, at which time she began experiencing increased pain from the lump and pain under her right arm. *See id.* at 1276–77.

In April 1994, Martin had a mammogram, the results of which revealed an abnormal mass in her right breast, located in the same place as the mass identified in the original mammogram in 1991. A biopsy resulted in a diagnosis of adenocarcinoma of the breast and on April 15, 1994, Martin underwent a right modified radical mastectomy. Martin then had to undergo chemotherapy from May 1994 through September 1994 because the cancer had spread to her lymph nodes. Martin filed her complaint against Richey in October 1994. Richey filed a motion arguing that Martin's action was time-barred by the two-year medical malpractice statute of limitations. *See id.* at 1277.

Upon review of Martin's case and the companion case of *Van Dusen*, 712 N.E.2d at 491, the Indiana Supreme Court held that under Article I, Sections 12 and 23 of the Indiana Constitution, the two-year statute of limitations applicable to medical malpractice claims is unconstitutional as applied to plaintiffs such as Martin, who could not have discovered the injury with reasonable diligence within two years of the alleged misconduct. *Van Dusen*, 712 N.E.2d at 493; *Martin*, 711 N.E.2d at 1282, 1284–85. In order to qualify under this exception, a plaintiff must have "no information that, in the exercise of reasonable diligence, should have led to the discovery of the alleged malpractice and ... resulting condition during the statutory period." *Van Dusen*, 712 N.E.2d at 493. Our supreme court further held in *Van Dusen* that in such cases where this statute of limitations is unconstitutional as applied, a plaintiff is given a full two-year time period within which to file suit, starting from the time "they discover the malpractice and the resulting injury or facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury." *Id.*

In *Van Dusen*, Stotts visited his family doctor in June 1992 for a head cold at which time his doctor performed a routine exam of his prostate. Upon detecting an abnormality, his family doctor then referred Stotts to an urologist, who performed a needle biopsy on a small tumor in the plaintiff's prostate. The biopsy was sent to the defendant doctors and hospital for diagnosis. In late July 1992, the defendant doctors interpreted the biopsy as benign. The urologist relied on this diagnosis and informed Stotts that the biopsy results showed no cancer. *See id.* at 494.

More than two years later, in November 1994, Stotts experienced pain and swelling in his groin area. He returned to his family doctor who again referred him to the same urologist. In January 1995, the urologist concluded that Stotts had metastatic cancer resulting from a prostate tu-

mor that had possibly been erroneously diagnosed as noncancerous in July 1992. The urologist confirmed the erroneous diagnosis in February 1996. Stotts then filed his complaint in April 1996. *See id.*

Our supreme court held that the medical malpractice statute of limitations was unconstitutional as applied to Stotts because he was "unaware that he had cancer and that it had spread to his lymph nodes until more than two years following the alleged negligent act," *id.* at 493, finding January 1995 (when Stotts was told that the biopsy diagnosis was possibly erroneous) the triggering date from which to start the two-year statute of limitations. *Id.* at 494. The court reasoned that Stotts had no information during the two years following the alleged act that could lead a reasonably diligent person to discover the alleged malpractice and resulting injury. *Id.* at 493.

More recently, in *Boggs v. Tri–State Radiology, Inc.,* our supreme court applied the *Martin* and *Van Dusen* rules in upholding the constitutionality of the medical malpractice statute of limitations as applied to a decedent, Boggs, who discovered, or could have discovered with reasonable diligence, the alleged malpractice and resulting injury within the two-year period after the occurrence of the alleged misconduct. *Boggs v. Tri–State Radiology, Inc.,* 730 N.E.2d 692, 694 (Ind.2000). Boggs visited her doctor in July 1991 after detecting a mass in her left breast. Her doctor ordered a mammogram during the first visit and then again in July 1992. Both tests were conducted at the doctor's office and interpreted by Tri–State Radiology. In August 1992, Boggs had a biopsy, which revealed a malignant mass in her left breast. She died in July 1993, and in July 1994, Boggs' husband filed a complaint. *See id.*

Our supreme court held that the claim was barred by the statute of limitations because the alleged malpractice occurred in July 1991, and Boggs discovered the injury in August 1992, which left Boggs with eleven months before the expiration of the statute of limitations during which to file the complaint. *Id.* at 695. The court acknowledged, "medical malpractice plaintiffs will frequently, if not virtually always, have varying amounts of time within which to file their claims before an occurrence-based statute of limitations expires." *Id.* at 697. Nevertheless, the court found that "[a]s long as the claim can reasonably be asserted before the statute expires, the only burden imposed upon the later discovering plaintiffs is that they have less time to make up their minds to sue." *Id.*

In our consideration of the medical malpractice statute of limitations and its application to the undisputed facts before us, we do not write on a clean slate. *Martin, Van Dusen,* and *Boggs* together create a two-stage analysis for the application of Indiana's two-year, medical malpractice limitation period. If a claimant discovers the alleged malpractice and resulting injury, or possesses information that would have led a reasonably diligent person to such discovery during the two-year period, then the purely occurrence-based, limitation period is both applicable and constitutional, so long as the claim can reasonably be asserted before the period expires. *Boggs,* 730 N.E.2d at 697–98; *Van Dusen,* 712 N.E.2d at 497–98; *Martin,* 711 N.E.2d at 1279–80. This first stage of analysis is all that is required in this case and will be the only analysis required under most facts and circumstances.

If, however, a claimant does not discover the alleged malpractice and resulting injury, and does not possess information that would lead a reasonably dili-

gent person to such discovery during the two-year period, then the purely occurrence-based, limitation period is unconstitutional as applied. *Van Dusen,* 712 N.E.2d at 497–98; *Martin,* 711 N.E.2d at 1279–80. Under these facts and circumstances, a second stage of analysis must be applied to determine when the claimant possessed enough information that, in the exercise of reasonable diligence, should have led to the discovery of the alleged malpractice and resulting injury. The date determined is the date the two-year limitations period begins to run for such a claimant. *Van Dusen,* 712 N.E.2d at 497–98; *Martin,* 711 N.E.2d at 1279–80.

■ Whether Indiana Code section 34–18–7–1 is constitutional as applied is a question of law to be determined by the trial court on a case-by-case basis. In some instances, this question will be subject to resolution on the basis of undisputed facts, as in the case before us. In other instances, the judge will be required to resolve disputed facts through pre-trial motion practice in order to determine the date upon which the claimant possessed enough information that, in the exercise of reasonable diligence, should have led to the discovery of the alleged malpractice and resulting injury.

In the case before us, Dr. Rogers requests that we reverse the trial court because there are no genuine issues of material fact with regard to the timing of the Mendels' filing. We agree that the facts material to the statute of limitations issue are not in dispute. It is undisputed that in December 1993, Dr. Rogers performed a hysterectomy on Maryetta in an attempt to rid her of endometrial cancer; Maryetta was then released from Dr. Rogers' care on January 4, 1994. It is also undisputed that in January 1995, only one year after her release from Dr. Rogers' care, Maryetta suffered from lower abdominal cramp-

ing (the same area treated by Dr. Rogers) and sought medical treatment from her family doctor. Maryetta was then diagnosed with metastatic endometrial cancer in March 1995. This diagnosis came just fourteen months after her release from Dr. Rogers' care, and was therefore within the first stage of the statute of limitations analysis. It is at this point, March 1995, that the Mendels had enough "information that, in the exercise of reasonable diligence, should have led to the discovery of the alleged malpractice ... during the statutory period." *Van Dusen,* 712 N.E.2d at 493.

■ The applicable limitations period began at the latest when Dr. Rogers failed to inform Maryetta of the test results by the time he released her from his care on January 4, 1994. Even under fraudulent concealment or continuing wrong theories, January 4, 1994 is the date upon which any tolling would end. *See Hughes v. Glaese,* 659 N.E.2d 516, 519 (Ind.1995) (discussing active and constructive fraudulent concealment); *Burton v. Elskens,* 730 N.E.2d 1281, 1283 (Ind.Ct.App.2000) (discussing the continuing wrong theory). After receiving Maryetta's diagnosis of metastatic endometrial cancer in March, 1995, the Mendels then had ten months of the occurrence-based two-year statute of limitations remaining during which they should have filed their complaint (until January 4, 1996). Ten months within which to initiate an action is not an "eve of midnight discovery," but rather, is a timeframe within which filing the complaint would be "reasonably possible." *Boggs,* 730 N.E.2d at 697–98.

## Conclusion

Because there are no genuine issues of material fact with regard to the timing of the filing of the Mendels' complaint, we reverse the trial court and remand with

instructions to enter summary judgment in favor of Dr. Rogers.

Reversed and remanded.

BAKER, J., and BAILEY, J., concur.