Carl A. LEVY, M.D., Appellant–Petitioner,

v.

Tracey L. NEWELL and Mark D. Newell, Appellees–Respondents.

No. 45A03–0401–CV–37.

Court of Appeals of Indiana.

Feb. 10, 2005.

Rehearing Denied April 5, 2005.

Robert J. Dignam, Merrillville, IN, Attorney for Appellant.

Michael W. Back, Crown Point, IN, Attorney for Appellees.

## OPINION

HOFFMAN, Senior Judge.

Appellant–Defendant Carl A. Levy, M.D. appeals the trial court's denial of his motion for summary judgment in an action filed by Appellees–Plaintiffs Tracey L. Newell and Mark D. Newell. We reverse and remand with instructions.

Levy raises one issue for our review, which we restate as whether the trial court erred in determining as a matter of law that the Newells' complaint and proposed complaint were not barred by the applicable statute of limitations.

On April 5, 2001, Levy performed a laparoscopic cholecystectomy (gall bladder surgery) on Tracey. Tracey was discharged from the hospital on the same day.

Tracey experienced increased jaundice and returned to the hospital on April 8, 2001. On April 11, 2001, an endoscopic retrograde cholangiopancreatography revealed that Tracey had a bile duct injury. Tracey was discharged from the hospital on April 11, 2001 to receive follow-up care at the University of Chicago Hospital.

By October 23, 2001, the Newells were so convinced they had a malpractice claim that they hired an attorney who sent a letter informing Levy that Tracey "strongly believes that you deviated from stan-

dards of care [in performing the April 5, 2001 surgery] which has resulted in substantial injury to her." (Appellant's App. at 57). The Newells subsequently hired another attorney who sent Tracey's medical records to an Illinois physician, Elizabeth Allen. Allen wrote a letter, dated February 18, 2003, advising the Newells that she believed they had a meritorious medical malpractice case against Levy.

The Newells subsequently filed their complaint with the trial court on May 13, 2003. A proposed complaint was filed the next day with the Indiana Department of Insurance. Levy responded by filing a motion for preliminary determination and summary judgment asking the trial court to determine as a matter of law that the Newells' complaint and proposed complaint were filed after the statute of limitation had run. The trial court denied Levy's motion, and he now appeals.

■■■ A motion for preliminary determination, when accompanied by evidentiary matters, "is akin to a motion for summary judgment and is subject to the same standard of review as any other summary judgment disposition." *Jacobs v. Manhart*, 770 N.E.2d 344, 349 (Ind.Ct.App. 2002), *trans. denied.* The purpose of summary judgment is to end litigation where there can be no factual dispute and where a determination may be made as a matter of law. *LeBrun v. Conner*, 702 N.E.2d 754, 756 (Ind.Ct.App.1998). Summary judgment is appropriate only if there is no evidence of a genuine issue of material fact for trial, and the moving party is entitled to judgment as a matter of law. *Aide v. Chrysler Financial Corp.*, 699 N.E.2d 1177, 1180 (Ind.Ct.App.1998), *trans. denied.*

■■■ Under Ind. Trial Rule 56, the moving party bears the burden of showing that there are no genuine issues of material fact. If the moving party meets its burden, the burden shifts to the non-moving party to set forth facts showing the existence of a genuine issue for trial. Ind. Trial Rule 56(C) and 56(E). When the moving party asserts the statute of limitations as an affirmative defense and makes a *prima facie* showing that the action was commenced outside of the statutory period, the non-moving party then has the burden of establishing an issue of fact material to a theory that avoids the affirmative defense. *Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692, 695 (Ind. 2000); *Jacobs*, 770 N.E.2d at 349. Additionally, "when material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts." *Jacobs, id.* When there are no disputed facts with regard to a motion for summary judgment and the question presented is a pure question of law, we review the matter de novo. *Id.*

■■■ Ind.Code § 27–12–7–1 provides that a medical malpractice claim must be filed within two years after the date of the alleged act, omission, or neglect. Indiana courts have repeatedly held that this two-year period begins to run at the occurrence of the negligence rather than at the time the negligence is discovered. *See e.g., Martin v. Richey*, 711 N.E.2d 1273, 1278 (Ind.1999); *LeBrun*, 702 N.E.2d at 757. The statute has been held constitutional on its face under Article 1, Sections 12 and 23 of the Indiana Constitution. *Martin*, 711 N.E.2d at 1279. As our supreme court observed in *Havens v. Ritchey*, 582 N.E.2d 792, 794 (Ind.1991), "[i]t is abundantly clear that the legislature intended the statute to begin running upon the act, omission, or neglect upon which the plaintiff complains. This conclusion is reached by observing the language of the statute of limitation, and the statute's specific purpose in the Medical Malpractice

Act." Simply stated, under the wording of the statute of limitation "an action for medical malpractice must be filed within two years from the date the alleged malpractice occurred, not when it was discovered." *Jacobs, id.*

Our supreme court has held that under some circumstances the statute of limitation is unconstitutional as applied to plaintiffs who, in the exercise of reasonable diligence, could not have discovered the alleged malpractice within the two-year limitation period. *See Van Dusen v. Stotts,* 712 N.E.2d 491, 495 (Ind.1999); *Martin,* 711 N.E.2d at 1285. As we noted in *Jacobs:*

> In *Martin* and *Van Dusen,* the plaintiffs suffered from diseases with "long latency" periods, and their injuries clearly did not manifest themselves until well beyond the two-year malpractice statute of limitation. Our Supreme Court held that because the occurrence-based limitation period foreclosed the plaintiffs from pursuing otherwise valid claims before they even had reason to know that such claims existed, the statute of limitation violated Article 1, Section 12 of the Indiana Constitution because it imposed an impossible condition on the access to courts and pursuit of tort remedies. The Court also held that, as applied to the medical malpractice victims who could not reasonably be expected to discover the asserted malpractice within the limitation period, the malpractice statute of limitation violated Article 1, Section 23 of the Indiana Constitution because it was not "uniformly applicable" to all medical malpractice victims.

770 N.E.2d at 350 (citations omitted).

In *Van Dusen* and *Martin,* the plaintiffs discovered the alleged acts of medical malpractice and resulting injury after the two-year statute of limitation had run. In both cases, the court held that the plaintiffs had two years from the date of discovery to file their respective malpractice suits.

Subsequently, in *Boggs,* the plaintiff discovered the alleged malpractice over a year after it had occurred, but eleven months prior to the expiration of the two-year statute of limitation. Our supreme court, using the rules established in *Van Dusen* and *Martin,* upheld the constitutionality of the occurrence-based limitation period. *Boggs,* 730 N.E.2d at 696–97. As to Article 1, Section 12, the court, "giving deference to the benefits of certainty against the burdens imposed by the malpractice statute of limitation, held that under these circumstances strict application of the statute of limitation was constitutional as applied to the plaintiff because she was not denied a 'meaningful opportunity' to pursue her malpractice claim." *Jacobs,* 770 N.E.2d at 350–51 (citing *Boggs,* 730 N.E.2d at 696). As to Article 1, Section 23, the *Boggs* court held that "as long as the statute of limitation does not shorten this window of time [between the discovery of the alleged malpractice and the expiration of the limitation period] so unreasonably that it is impractical for the plaintiff to file a claim at all, as it did in *Martin* and *Van Dusen,* it is constitutional as applied to the plaintiff." *Boggs,* 730 N.E.2d at 697. The court recognized that under the occurrence-based statute of limitation, plaintiffs will almost always have varying amounts of time in which to file their claims. *Id.* The court further recognized the possibility of plaintiffs discovering malpractice claims within a very short period of time before the expiration of the limitation period, but stated that the issues associated with such last minute discoveries would be best addressed on a case-by-case basis. *Id.* at 697–98.

In *Jacobs,* this court set forth a three-step analysis for determining whether the exception to the occurrence-based two-

year statute of limitation will apply. First, the court must determine "when the alleged malpractice occurred and thus, when the two-year statutory period expired." *Jacobs*, 770 N.E.2d at 352. Second, the court must determine when the "discovery date" occurred. *Id.* This date occurs when the plaintiff actually discovered the alleged malpractice and resulting injury, or "possessed enough information that would have led a reasonably diligent person to make such a discovery." *Id.* If we determine that the discovery date falls within the two-year limitation period, then a third stage of analysis must be applied to determine "whether the time which remains of the limitation period is reasonable rendering the occurrence-based statute of limitation constitutional as applied." *Id.*

▌ In the present case, the Newells stated in their complaint that the act of malpractice occurred on April 5, 2001, when Levy allegedly cut Tracey's biliary ducts[1] and failed to perform a cholangiogram.[2] (Appellant's App. at 6). Thus, the two-year occurrence-based statute of limitation would expire in April of 2003. The Newells contend, however, that they were unable to discover the alleged malpractice until February 18, 2003, the date upon which Allen's letter was written. The Newells further contend that a strict interpretation of the statute to require filing of their action by the end of the two-year period from the alleged act of malpractice, a period of less than two months from the discovery of the alleged malpractice, would

be unconstitutional as applied under Article 1, Section 12 of the Indiana Constitution. The Newells contend that the filing of their complaint and proposed complaint in May of 2003 was timely.[3]

In determining the date upon which discovery of the alleged malpractice occurred, we construe all facts in favor of the Newells as the nonmovants. The Newells contend that they could not discover the alleged malpractice until they had medical personnel review Tracey's medical records. This contention forms the basis for their contention that discovery of the alleged malpractice did not occur until Adams wrote her letter informing the Newells that malpractice had occurred.

As we noted above, within the context of *Boggs*, "discovery" may occur before a physician or other medical expert gives a definitive opinion regarding the alleged act of malpractice. Indeed, discovery occurs when the plaintiffs "possessed enough information that would have led a reasonably diligent person to make such a discovery." Although the Newells may not have had actual discovery based upon a physician's opinion until February of 2003, the designated facts indicate that they clearly possessed enough information that would have led a reasonable person to believe that Levy committed malpractice on April 5, 2001. Within three days of the operation performed by Levy, Tracey began having indications that something was wrong. On April 11, 2001, a diagnostic test was per-

1. The bile ducts are ducts "by which bile passes from the liver or gallbladder to the duodenum." Merriam Webster Medical Dictionary (2002) <http://www.intelihealth.com/cgi-bin/dictionary>

2. A choangiogram is "a radiograph of the bile ducts made after the ingestion of a radiopaque substance." Merriam Webster Medical Dictionary (2002) <http://www.intelihealth.com/cgi-bin/dictionary>

3. In partial support of their contentions, the Newells cite *Booth v. Wiley*, 793 N.E.2d 1104 (Ind.Ct.App.2003). We note that our supreme court accepted this case on transfer. Accordingly, unless this court's opinion or portions thereof are expressly adopted or summarily affirmed by the supreme court, the case has no precedential value. *See* Indiana Appellate Rule 58(A).

formed "revealing a biliary duct injury secondary to the laparoscopic cholecystectomy." (Tracey's Affidavit; Appellant's App. at 78). On the next day, Tracey was admitted to the University of Chicago Hospital for "evaluation and surgical repair of injury." (Tracey's Affidavit; Appellant's App. at 78). In August of 2001, within four months after the injury was discovered, and some twenty months before the expiration of the statute of limitation, the Newells consulted an attorney. On October 23, 2001, approximately eighteen months before the expiration of the limitation period, the Newells' felt the need to direct their attorney to write the letter referring to Tracey's "strong" belief that Levy had committed malpractice. We hold as a matter of law that the Newells possessed sufficient knowledge by October of 2001, if not sooner, to put a reasonable person on notice that malpractice had caused the injury to Tracey's bile ducts. Thus, at the very least, the Newells had over fourteen months in which to file a malpractice suit against Levy. Enforcement of the two-year occurrence-based statute of limitation neither denied the Newells a meaningful opportunity to pursue their malpractice claims nor shortened the window of time between discovery and the expiration of the limitation period so unreasonably that it was impractical for them to file their claim.

Reversed and remanded with instructions that the trial court grant Levy's motion.

ROBB, J., and BARNES, J., concur.